```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LUV N' CARE LTD. and ADMAR
INTERNATIONAL, INC.,

                Plaintiffs,                MEMORANDUM AND ORDER

          - against -                      15 Civ. 9248 (NRB)

GOLDBERG COHEN, LLP, LEE A.
GOLDBERG, and MORRIS E. COHEN,

                Defendants.

----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Luv n' Care, Ltd. ("LNC") and Admar International, Inc. ("Admar") (collectively, "plaintiffs") assert five claims of legal malpractice against their former attorneys and the law firm of Goldberg Cohen, LLP ("GC"). Defendants move to dismiss on the grounds that the claims are time-barred. For the following reasons, the motion to dismiss is granted.

## I. BACKGROUND[1]

**A. The Parties**

Plaintiff LNC is a Louisiana corporation with its principal place of business at 3030 Aurora Avenue in Monroe, Louisiana. Compl. ¶ 2. Plaintiff Admar is a Delaware corporation with its

---

[1] Unless otherwise noted, factual background is drawn from plaintiffs' Amended Complaint, ECF No. 18 ("Compl."), and the exhibits annexed thereto.

principal place of business at 3030 Aurora Avenue in Monroe, Louisiana.  Id. ¶ 3.[2]  Defendant GC is a limited liability partnership located in New York.  Id. ¶ 4.  Defendant Lee A.

---

[2]     In an unusual twist, plaintiffs attempt to disavow their assertion that Admar's principal place of business is in Louisiana.  Pls.' Opp'n to Defs.' Mot. to Dismiss 8 n.3, ECF No. 28 ("Opp'n") ("Unfortunately, the Amended Complaint mistakenly states that Admar does have a 'principal place of business' in Louisiana, but this allegation is incorrect.").  Plaintiffs submit the declaration of Nouri E. Hakim, president and owner of Admar, asserting that Admar has no business presence in Louisiana (but, tellingly, failing to state Admar's address, phone number, or principal place of business).  Decl. of Nouri E. Hakim ¶ 3, Feb. 2, 2016, Opp'n Ex. A.  Ironically, plaintiffs blame the purported mistake on defendants, stating that "this mistake in pleading is an artifact of using as a model allegations drafted by [GC] in the lawsuits that are accused of malpractice herein," and they seek leave to amend to remove this assertion.  Opp'n 8 n.3.  Defendants, in response, submit decades of public records containing statements by Admar and its agents -- including a prior sworn statement of Hakim -- that Admar's principal place of business is in Louisiana.  See Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss 4-6 & Exs. 2-19, ECF No. 29.  At oral argument, plaintiffs' counsel stated that he did not contest the authenticity of these documents or object to our reliance on them.  Oral Arg. Tr. ("Tr.") 3-4, Aug. 4, 2016.

We reject plaintiffs' attempt to disavow their assertion regarding Admar's principal place of business.  As an initial matter, a plaintiff's allegation in its own complaint constitutes a judicial admission.  See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) ("'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)).  In addition, "[t]he amendment of a pleading does not make it any less an admission of the party."  Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir. 1998) (internal quotation marks omitted)), abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 509-10 (2002).

Moreover, plaintiffs' purported excuse -- that the misstatement is the fault of defendants, who drafted previous complaints on plaintiffs' behalf -- is both logically and ethically dubious.  Rule 11 applies to every pleading, whether or not its material is recycled from another source, and it is particularly unreasonably to blindly re-use and rely upon the work of former counsel in the course of suing that counsel for legal malpractice.  It is also notable that plaintiffs have made this alleged misstatement twice, in both of their initial and Amended Complaints.  Prior to the filing of the Amended Complaint, defendants submitted a pre-motion letter asserting the applicability of Louisiana law.  See Ltr. of Dec. 3, 2015, at 2, ECF No. 8.  Finally, if there is any doubt, the long history of contrary assertions by Admar, many in documents in which defendants undisputedly had no involvement whatsoever, establish that Admar has frequently claimed Monroe, Louisiana as its principal place of business.  Plaintiffs present no contrary evidence.  In this context, plaintiffs' claim cannot be accepted, and we consider Admar to be a Delaware corporation with its principal place of business in Louisiana.

Goldberg, a former member of GC, is a New York citizen licensed to practice law in the State of New York.  Id. ¶ 5.  Defendant Morris E. Cohen, a current member of GC, is also a New York citizen licensed to practice law in New York.  Id. ¶ 6.  Both Goldberg and Cohen are Registered Patent Attorneys licensed to practice before the United States Patent and Trademark Office ("PTO").  Id. ¶ 13.

**B. The Alleged Malpractice**

Plaintiffs advance five claims of legal malpractice arising out of four matters in which they were represented by GC, Goldberg, and Cohen.  We emphasize that the facts recited are drawn from the Amended Complaint, and, at oral argument, defendants vigorously disputed many of those allegations.  In resolving the instant motion, our role is not to resolve these disputes.

**1. The Jackel Litigation**

First, plaintiffs allege defendants committed malpractice while representing LNC in an action brought by LNC in Louisiana state court.[3]  Compl. ¶ 1(a).  In that case, filed in 2010, LNC alleged breach of contract and unfair competition claims against Jackel International Limited ("Jackel") and claimed that Mayborn USA, Inc. ("Mayborn"), an affiliate of Jackel, had sold and was selling child and baby products that were closely similar to LNC's product designs.  Compl. Ex. D, at 2.  Plaintiffs now claim

---

[3]   See Luv N' Care, Ltd. v. Jackel Int'l Ltd., No. 10-1891 (La. 4th J. Dist. Ct.).

defendants failed to timely include allegations related to a certain line of hard-top cups for children produced by Mayborn (the "Explora" line) in the lawsuit as an offending product. Compl. ¶¶ 15-16.  As a result, plaintiffs assert, the trial court disallowed claims based on the Explora line at trial. Id. ¶ 16.[4] Following a six-day jury trial, Mayborn was found liable with respect to its sale of certain non-hard-top cups, the only cups left in the case at that time. Compl. Ex. D, at 2. Final judgment in the state court case -- finding Mayborn liable with respect to the cups at issue in the case, but not the hard-top cups that had been excluded -- was entered on May 22, 2013. Id. at 3.

Subsequently, LNC sued Jackel and Mayborn in the Eastern District of Texas, seeking damages related to the Explora line.[5] Compl. ¶ 17.  On September 24, 2014, Jackel and Mayborn answered, asserting as an affirmative defense that the claims were barred by

---

[4]   A Memorandum and Order of the district court in the subsequent federal case, attached as Exhibit D to the Amended Complaint, explains that LNC initially identified the Explora line an offending product, but that LNC withdrew its hard-top cups claim from the case during discovery and did not oppose a motion in limine to remove the issue from the upcoming trial. Compl. Ex. D, at 2.  When, "near the eve of trial," LNC attempted to re-insert the claim back into the case, the judge denied the motion. Id.  At oral argument in our case, defendants asserted that they did not begin to represent LNC in this matter until after the Explora cups claim had been withdrawn in the first instance.  Tr. 35-37.  The Complaint and its attachments do not resolve the representational question.  For the purposes of this motion, we presume defendants represented LNC throughout the Louisiana state court case.

[5]   The Amended Complaint erroneously states that GC represented plaintiffs in this subsequent litigation.  As plaintiffs acknowledged at oral argument, Tr. 17, a review of the docket sheet in the federal case indicates that none of the defendants was involved. See Luv N' Care, LTD v. Jackel Int'l, Ltd., No. 2:14-cv-855 (JRG) (E.D. Tex.).

4

the doctrines of collateral estoppel and res judicata, given the result of the Louisiana state court case.  Id. ¶ 18.  On December 22, Jackel and Mayborn moved to dismiss on this basis.  Id. ¶ 19.  On August 10, 2015, the district court granted the motion on res judicata grounds.  Id. ¶ 20 & Ex. D (Memorandum & Order).

**2. The Philips Litigation**

Second, plaintiffs allege that defendants committed malpractice in connection with certain patent applications made on behalf of LNC.  Compl. ¶ 1(b).  Specifically, plaintiffs claim that in 1998, defendant Cohen applied for a patent on behalf of LNC in which he "disclaimed . . . a material portion of the scope of [the] patent claims," thus narrowing the scope of the patent ultimately issued as U.S. Patent Number 6,321,931 (the "'931 patent").  Id. 27.[6]  Subsequently, Cohen worked on five patent applications deriving their priority from the '931 patent, and the five patents were issued between April 2007 and January 2012.  Id. ¶¶ 28-29.  Plaintiffs allege that in the course of working on these applications, Cohen should have rescinded the disclaimer made in connection with the "parent" '931 patent, but failed to do so.  Id. ¶ 29.  As a result, in a subsequent enforcement litigation

---

[6]   Other litigation conducted by LNC reflects a different story, namely, that in 2000, LNC narrowed the claims of the '931 patent after the PTO rejected an initial application on the basis that the invention described was not sufficiently distinct from other patented inventions.  See Hakim v. Cannon Avent Grp., PLC, No. CIV.A.3-02-1371, 2005 WL 1793760, at *4 (W.D. La. May 4, 2005), aff'd, 479 F.3d 1313 (Fed. Cir. 2007).

5

brought by LNC in the Eastern District of Texas,[7] the court held that the five derivative patents remained subject to the same disclaimer as the original '931 patent and therefore were not infringed. Id.; see id. Ex. F (Memorandum & Order). Accordingly, LNC was forced to concede the litigation, and a "Final Judgment of Noninfringement and Order of Dismissal" was entered on September 3, 2013.[8] Id. Ex G. On December 11, 2014, the decision of the district court was affirmed by the Federal Circuit. Luv N' Care Ltd. v. Philips Elecs. N. Am. Corp., 587 F. App'x 657 (Fed. Cir. 2014) (mem.).

### 3. The Royal King Litigation

Third, plaintiffs allege the defendants failed to timely seek recovery of attorney's fees in a breach of contract case brought by LNC and Admar in the Eastern District of Texas.[9] Compl. ¶ 1(c). In that case, plaintiffs, represented by defendants, obtained a $10 million jury verdict. Id. ¶ 42. Judgment was entered on February 20, 2014. Id. Plaintiffs assert that defendants' petition for attorney's fees, filed on March 20, 2014, was impermissibly untimely under Federal and Texas law. Id. ¶¶ 41,

---

[7] See Luv 'N Care, LTD. v. Koninklijke Philips Elecs. N.V., No. 2:11-cv-512 (RSP) (E.D. Tex.).

[8] The Amended Complaint erroneously states that this order was entered on September 3, 2014. Compl. ¶ 30. It was filed on September 3, 2013. Id. Ex. G.

[9] See Luv N' Care, LTD. v. Royal King Infant Prods. Co., No. 2:10-cv-461 (JRG) (E.D. Tex.).

6

43-44. Following briefing of the motion, on March 20, 2015, the court summarily denied the petition without explanation.  Id. Ex. J (Order).

### 4. The Toys "R" Us Litigation

Plaintiffs' fourth and fifth claims allege malpractice in connection with defendants' defense of two patents at issue in an action brought by LNC and Admar in this district.[10]  Compl. ¶ 49. In that litigation, plaintiffs brought claims of patent infringement, trade dress infringement, and unfair competition against defendants Toys "R" Us, Inc. and Munchkin, Inc.  Id.  Toys "R" Us and Munchkin filed petitions with the PTO requesting examinations of plaintiffs' two patents at issue in the litigation. Id. ¶¶ 50-51.  On December 10, 2012, the district court stayed the action pending the patent examinations.  Id. ¶ 53.  Plaintiffs assert that, while representing them in these examinations, defendants adopted a flawed strategy of seeking to amend the challenged patents rather than attack on the merits the potential grounds for invalidation.

### a. The '465 Patent ("Drinking Cup")

Around December 5, 2012, Toys "R" Us and Munchkin filed a request for inter partes review of the patentability of U.S. Patent No. 617,465, entitled "Drinking Cup" (the "'465 Patent"), before

---

[10]   See Luv N' Care, Ltd. v. Toys "R" Us, Inc., No. 12 Civ. 228 (SAS) (S.D.N.Y.).

7

the Patent Trial and Appeal Board ("PTAB") of the PTO. Compl. ¶¶ 1(d), 51–52. Defendant Cohen had prosecuted the patent application in 2010 on behalf of LNC. Id. ¶ 52. On April 25, 2013, the PTAB instituted an inter partes review on the issue of whether the '465 Patent was obvious over two other patents held by LNC. Id. ¶ 56. Plaintiffs assert that, in representing LNC before the PTAB, defendant Cohen sought to amend the '465 patent to obviate the issue rather than address the patentability of the '465 patent on the merits. Id. ¶¶ 61–65. Specifically, plaintiffs take issue with Cohen's filings of July 25, 2013, in which Cohen (1) "elected to rely primarily on the motion to amend" to prevail before the PTAB; and (2) failed to follow certain requirements of the PTO's regulations and its "Patent Trial Practice Guide." Id. On April 21, 2014, the PTAB issued a final decision holding that the sole claim of the '465 patent was unpatentable and that LNC had not met its burden of proof on the motion to amend. Id. ¶ 66. LNC appealed. Id. ¶ 67. The Court of Appeals for the Federal Circuit affirmed on April 14, 2015.[11] Luv N' Care Ltd. v. Munchkin, Inc., 599 F. App'x 958 (Fed. Cir. 2015) (mem.). LNC's request for a rehearing en banc was denied, Compl. ¶ 67, and the United States Supreme Court denied LNC's petition for a writ of certiorari on November 2, 2015. 136 S. Ct. 405 (2015) (mem.).

---

[11]   The Amended Complaint erroneously states that the Federal Circuit affirmed on April 14, 2014. Compl. ¶ 67.

8

### b. The '439 Patent ("Drinking Cup Top")

A similar episode occurred with respect to the second LNC patent involved in the Toys "R" Us litigation. On April 20, 2012, Toys "R" Us and Munchkin filed a petition seeking inter partes reexamination before the PTO of the patentability of U.S. Patent No. 634,439, entitled "Drinking Cup Top" (the "'439 Patent"). Compl. ¶¶ 1(e), 50, 74. Defendant Cohen had prosecuted the patent application in 2011 on behalf of LNC. Id. ¶ 74. Once again, plaintiffs assert, Cohen adopted a strategy of attempting to amend the '439 patent, which strategy did not succeed and resulted in the invalidation of the patent. Id. ¶ 76–81.

On September 24, 2014, LNC revoked defendants' power of attorney to represent it in the inter partes reexamination in favor of alternate patent counsel. Id. ¶ 82. On October 7, 2014, the Patent Examiner rejected the sole claim of the '439 patent and did not accept the proposed amendment. Id. ¶ 83. Although LNC filed a notice of appeal to the PTAB, it ultimately elected not to pursue an appeal. Id. ¶ 89.

### 5. Defendants' Withdrawal

In 2014, GC withdrew as counsel to plaintiffs in all the cases involved in this action that were still ongoing. At oral argument,

the parties agreed that defendants had withdrawn as counsel in all four matters by October of 2014. Tr. 12-13.[12]

**C. Procedural History**

Plaintiffs filed their initial Complaint in this Court on November 23, 2015, asserting Counts One, Two and Three. Following an exchange of pre-motion letters, plaintiffs filed their Amended Complaint -- first asserting Counts Four and Five -- on January 5, 2016.

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding the motion, the Court may consider exhibits attached to the complaint and documents incorporated by reference into the complaint. Fed. R. Civ. P. 10(c); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). We may also take judicial notice of the public docket

---

[12] A review of the docket sheet in the Royal King case indicates GC's motion to withdraw was granted on November 12, 2014. This discrepancy is immaterial.

10

sheets in the litigations that are the subject of plaintiffs' malpractice claims. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

A court may consider a statute of limitations defense on a 12(b)(6) motion to dismiss "if the defense appears on the face of the complaint." Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008); see Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). Defendants bear the burden of proving that an applicable statute of limitations has run. Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004).

### III. DISCUSSION

#### A. Choice of Law

The parties dispute what law governs the timeliness of plaintiffs' claims. A federal court sitting in diversity applies the choice of law rules of the forum state to determine which statute of limitations applies. See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d Cir. 2006); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). We therefore look to New York choice of law rules.

Under New York's "borrowing statute," when a non-resident sues in New York on a cause of action accruing outside New York, the applicable statute of limitations is the shorter of (1) New York's limitations period and (2) the limitations period of the

11

state where the claim accrued.  N.Y. C.P.L.R. § 202.  This rule "prevents nonresidents from shopping in New York for a favorable Statute of Limitations."  Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 528, 715 N.E.2d 482, 484 (1999).

We first determine where the cause of action accrued.  A cause of action accrues at "the time when, and the place where, the plaintiff first had the right to bring the cause of action."  Id.  "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  Id. at 529, 715 N.E.2d at 485.  If a court determines the cause of action accrued in another state and borrows a shorter limitations period from that state, it should also borrow that state's rules for accrual and tolling.  Norex Petroleum Ltd. v. Blavatnik, 23 N.Y.3d 665, 676, 16 N.E.3d 561, 569 (2014).

Legal malpractice claims are claims of pure economic injury.  See Dombrowski v. Bulson, 19 N.Y.3d 347, 352, 971 N.E.2d 338, 340 (2012) ("We see no compelling reason to depart from the established rule limiting recovery in legal malpractice actions to pecuniary damages.").  Therefore, they accrue where the plaintiff resides and sustains the economic loss.  See Kat House Prods., LLC v. Paul, Hastings, Janofsky & Walker, LLP, 71 A.D.3d 580, 580–81, 897 N.Y.S.2d 90, 91 (1st Dep't 2010); GML, Inc. v. Cinque & Cinque, P.C., 35 A.D.3d 195, 825 N.Y.S.2d 212, 213 (1st Dep't 2006), aff'd, 9 N.Y.3d 949, 877 N.E.2d 649 (2007).  "Under the New York borrowing

statute, a business's principal place of business constitutes the sole residency of that business entity." Woori Bank v. Merrill Lynch, 923 F. Supp. 2d 491, 495 (S.D.N.Y.), aff'd, 542 F. App'x 81 (2d Cir. 2013).[13]  Because plaintiffs have their principal places of business in Louisiana, their alleged malpractice claims accrued

---

[13]   Plaintiffs contest this proposition, urging instead that a corporation's place of incorporation should control its residency for the purposes of New York's borrowing statute.  Opp'n 16.  The New York Court of Appeals has not decided the issue.  See Global Fin. Corp., 93 N.Y.2d at 530, 715 N.E.2d at 485 ("Here, plaintiff's causes of action are time-barred whether one looks to its State of incorporation or its principal place of business.").  However, we are persuaded that the economic injury of a tort would be most clearly and obviously felt by a corporation where its principal place of business is located.  Indeed, "[c]ourts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business."  Woori Bank 923 F. Supp. 2d at 494.  See Robb Evans & Assocs. LLC v. Sun Am. Life Ins., No. 10 Civ. 5999 (GBD), 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012); Guzman v. Macy's Retail Holdings, Inc., No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *10 (S.D.N.Y. Mar. 29, 2010) ("A corporation's principal place of business, rather than its state of incorporation, determines its residence." (internal quotation marks omitted)); Pereira v. Cogan, No. 00 CIV. 619 (RWS), 2001 WL 243537, at *18 (S.D.N.Y. Mar. 8, 2001) ("District courts in this circuit applying New York law have held that the residence of a corporation for purposes of New York's borrowing statute is the corporation's principal place of business."), rev'd on other grounds sub nom. Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005); Investigative Grp., Inc. v. Brooke Grp. Ltd., No. 95 Civ. 3919 (CSH), 1997 WL 727484, at *3 (S.D.N.Y. Nov. 21, 1997) ("For purposes of the borrowing statute . . . a corporation's residence is its principal place of business."); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Forman 635 Joint Venture, No. 94 Civ. 1312 (LLS), 1996 WL 507317, at *4 (S.D.N.Y. Sept. 6, 1996); McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 727 F. Supp. 833, 834 (S.D.N.Y. 1989).  That is the rule we follow here.

   We acknowledge, however, that the caselaw contains some less decisive, and even contradictory, formulations.  See Gordon v. Credno, 102 A.D.3d 584, 585, 960 N.Y.S.2d 360, 361 (1st Dep't 2013) ("[T]he derivative claims plaintiff asserted on behalf of the corporation accrued for purposes of CPLR 202 in Wyoming, where the corporation was incorporated[.]"); Oxbow Calcining USA Inc. v. Am. Indus. Partners, 96 A.D.3d 646, 651, 948 N.Y.S.2d 24, 30 (1st Dep't 2012) ("In the case of a corporate plaintiff, [the place of injury] may be the state of incorporation or its principal place of business."); Verizon Directories Corp. v. Continuum Health Partners, Inc., 74 A.D.3d 416, 902 N.Y.S.2d 343 (1st Dep't 2010) ("For purposes of CPLR 202, plaintiff is a 'resident' of, and its cause of action accrued in, Delaware, the state of its incorporation."); Baena v. Woori Bank, No. 05 Civ. 7018 (PKC), 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006) ("If the injured party is a corporation, then the place of residence for the purposes of CPLR § 202 is traditionally the state of incorporation or the corporation's principal place of business.").

13

in Louisiana. Therefore, we consider the timeliness of plaintiffs' claims under Louisiana law.

**B. Louisiana's Statute of Limitations for Malpractice**

Louisiana Revised Statutes § 9:5605, entitled "Actions for legal malpractice" ("Section 5605"), provides:

> No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. Ann. § 9:5605(A). Notably, the one- and three-year limitations periods imposed by Section 5605 are "peremptive," meaning that they "may not be renounced, interrupted, or suspended." La. Rev. Stat. Ann. § 9:5605(B). That is to say, they may not be tolled by the equitable doctrines frequently applied (in Louisiana and elsewhere) to "soften the occasional harshness" of statutory limitations periods. Jenkins v. Starns, 85 So. 3d 612, 626 (La. 2012).

14

In the briefing, plaintiffs assert that Section 5605 does not apply to Counts Two through Five[14] because the malpractice alleged was committed in connection with proceedings outside Louisiana by lawyers who are not members of the Louisiana bar. Opp'n 19-22. We reject this argument. Although the statute applies to malpractice "action[s] . . . against any attorney at law duly admitted to practice in [Louisiana]," it also applies to actions against any entity "authorized by the laws of [Louisiana] to engage in the practice of law[.]" We are persuaded that this provision must be read to apply to law firms and lawyers authorized -- that is, not prohibited -- to practice law in Louisiana, and not just to members of the Louisiana bar.[15] See Evans v. Union Bank of Switz., No. Civ.A.01-1507, 2002 WL 31682787, at *8 (E.D. La. Nov. 25, 2002) (applying Section 5605 to Louisiana plaintiff's malpractice claim against law firm incorporated in Delaware with main location in New York arising out of securities transaction conducted principally in New York). As plaintiffs conceded at oral argument, Tr. 13-15, the relevant representations undertaken

---

[14] It is undisputed that Goldberg and Cohen were admitted pro hac vice in connection with the Jackel state court case that is the subject of Count One. Opp'n 21. Therefore, they were "duly admitted" to practice in Louisiana for the purposes of the case.

[15] We note, however, that some courts have declined to decide the issue on the basis that the Louisiana Supreme Court has not addressed the question. See Henry v. Duane Morris, LLP, 210 F. App'x 356, 359 (5th Cir. 2006); Thermo Credit, LLC v. Cordia Corp., No. Civ.A.12-1454, 2013 WL 425930, at *7 (E.D. La. Feb. 4, 2013); Conwill v. Greenberg Traurig, L.L.P., No. Civ.A.09-4365, 2010 WL 3021553, at *5 (E.D. La. July 29, 2010).

15

by defendants were authorized by several Louisiana laws expressly permitting out-of-state lawyers to furnish advice to Louisiana clients in Louisiana and to represent them outside of Louisiana.[16] Therefore, GC and its members were "authorized by the laws of [Louisiana] to engage in the practice of law" in connection with these matters, and the malpractice claims lodged against are subject to Section 5605.[17]

With respect to accrual of malpractice claims, "the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiff's position." Jenkins, 85 So. 3d at 621. Thus, the statutory period begins to run "when the plaintiff knew or should have known of the

---

[16]   See La. Rev. Stat. Ann. § 37:214 (authorizing out-of-state attorneys to practice in Louisiana in association with a local licensed attorney); La. Sup. Ct. R. XVII § 13(B)-(C) (allowing out-of-state attorneys to render legal services, both in and outside of Louisiana, in connection with of out-of-state proceedings on behalf of a Louisiana client); La. R. Prof'l Conduct 5.5(c)-(d) (permitting lawyers admitted in another U.S. jurisdiction to provide legal services in Louisiana under certain conditions, including "services that the lawyer is authorized to provide by federal law"). See also Sperry v. Florida, 373 U.S. 379, 385 (1963) (holding state may not enjoin a nonlawyer registered to practice before the PTO from preparing and prosecuting patent applications).

[17]   Even if Section 5605 did not apply, another Louisiana statute imposes a one-year limitations period for actions in tort. See La. Civ. Code Ann. art. 3492 ("Article 3492"). This provision applied to legal malpractice claims prior to the enactment of Section 5605 in 1990. Jenkins, 85 So. 3d at 626. The one-year periods contained in Sections 5605 and Article 3492 both operate under an injury discovery rule. Id. at 621. Article 3492 is different from Section 5605 in that the former is "prescriptive," not "peremptive," and therefore Article 3492, unlike Section 5605, is subject to equitable doctrines such as the "continuous representation rule," which tolls the malpractice limitations period until the representation at issue has terminated. Id. at 627; see Reeder v. North, 701 So. 3d 1291, 1296–97 (La. 1997). However, because defendants withdrew from their representation of plaintiffs more than one year before the first Complaint in this case was filed, the continuous representation rule offers no help to plaintiffs. The other main difference between Section 5605 and Article 3492 is that Section 5605 also imposes a three-year period of repose, which applies regardless of the date the injury was discovered.

existence of facts that would have enabled her to state a cause of action for legal malpractice." Id. "A claimant's mere apprehension something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence his problem may have been caused by acts of malpractice." Id. At the same time, the full extent of the damage need not be realized or known. Harvey v. Dixie Graphics, Inc., 593 So. 2d 351, 354 (La. 1992) (applying Article 3492). Thus, in Louisiana, a malpractice claim has started to accrue by the time a plaintiff begins to incur expenses to investigate and correct the malpractice, id. at 355, or when a plaintiff replaces its legal counsel, Henry, 210 F. App'x at 359. It does not require a final adverse judgment or the exhaustion of every avenue of appeal. See Reeder, 701 So. 2d at 1295.

## C. Analysis

Applying Louisiana law, we find that none of plaintiffs' five claims is timely because the injury occurred, and was or reasonably should have been discovered, more than one year before plaintiffs first asserted their claims. We note that, given the conclusions we have reached thus far, this final step is not contested: at oral argument, plaintiffs acknowledged that if Louisiana law applied, their claims are time-barred because the negligence alleged was discovered more than one year prior to filing. Tr.

17

31-32.  Despite this concession, we review the reasons that each count is time-barred.

As far as Count One, the alleged malpractice -- defendants' failure to include the Explora line in the Louisiana state court trial -- was committed prior to the start of the trial, and certainly by the entry of final judgment in that case on May 22, 2013.  Even assuming plaintiffs were not aware of the injurious acts or omissions at that time, they surely were by the time Jackel and Mayborn asserted a res judicata defense in their September 24, 2014 answer in the subsequent Texas litigation, in which LNC, represented by new counsel, again sought to recover Explora-related damages.  Nor does the analysis change because the harm was not fully realized until the Judge's final decision.

Count Two is also untimely.  The alleged errors in connection with the Philips litigation occurred in the course of GC's handling of five patent applications on LNC's behalf.  These patents were ultimately issued in between April 2007 and January 2012.  Thus, the malpractice alleged is barred by Section 5605's three-year peremptive period.  Moreover, plaintiffs undoubtedly had discovered the error once the final judgment and order of dismissal was entered on September 3, 2013, by which time LNC had conceded non-infringement in the Philips case.  Finally, GC withdrew as counsel from the case by October 2014.  Given that all of these developments occurred more than one year before plaintiffs filed

their Complaint of November 24, 2015, the claim asserted in Count Two is untimely.

Turning to Count Three, LNC's general counsel is listed as attorney of record in the Royal King case, and LNC conceded it was aware of the late filing around the time it occurred. Tr. 27. Furthermore, plaintiffs surely discovered or should have discovered the allegedly late application for attorney's fees upon receipt of their adversary's opposition brief, filed on April 7, 2014. Finally, as noted, defendants withdrew as counsel in October (or November) of 2014, obviating the possibility that they hid the error from plaintiffs beyond that point.

Finally, Counts Four and Five are not timely. The alleged errors, involving defendant Cohen's efforts to move to amend the patents at issue, first occurred in his filings of July 25, 2013. By September 24, 2014, plaintiffs had revoked defendants' power of attorney, and adverse decisions invalidating the '465 and '439 patents were issued on April 21, 2014, and October 7, 2014, respectively. Using any of these events as the date of discovery, the injury was discovered more than one year before January 5, 2016, when Counts Four and Five were first asserted in the Amended Complaint. The claims are therefore time-barred.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion pending at Docket Number 19, to enter judgment for defendants, and to close this case.

**SO ORDERED.**

Dated:   New York, New York
         August 18, 2016

　　　　　　　　　　　　　　　　　　/s/ Naomi Reice Buchwald
　　　　　　　　　　　　　　　　　　NAOMI REICE BUCHWALD
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE